**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Pierucci,<br><br>    Plaintiff,<br><br>v.<br><br>Homes.com Incorporated,<br><br>    Defendant. | No. CV-20-08048-PCT-DWL<br><br>**ORDER** |

   Pending before the Court are four motions filed by Defendant Homes.com, Incorporated ("Homes.com"). (Docs. 13, 14, 15, 28.) The first is a motion to transfer venue to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a), the second a motion to dismiss under Rule 12(b)(6), the third a motion to strike a proposed class definition, and the last a motion to stay further proceedings in this case. (*Id.*) For the following reasons, the motion to transfer will be granted and the other motions will be denied without prejudice, to be refiled in the Eastern District of Virginia.

**BACKGROUND**

I. Factual Background

   The facts as alleged in Plaintiff Lisa Pierucci's complaint are as follows. Homes.com is a "real estate website that among other things generates leads for listing for real estate agents." (Doc. 1 ¶ 5.) It markets these leads through the use of "unsolicited, autodialed text messages." (*Id.* ¶ 6.)

   On February 27, 2020 Pierucci, a resident of Lake Havasu City, Arizona, received

one such text message. (*Id.* ¶¶ 7-8.) The message purported to be from "Dion with Homes.com" and stated that Homes.com was "looking for an agent to pick up openings we have in your county and surrounding areas to work every pre-screened buyer/seller lead coming through." (*Id.* ¶ 7.) The text further offered "30% OFF on ANY zip codes, to help agents get a head start on preparing for the upcoming season" and asked "[w]hat zip codes/areas" Pierucci liked to target. (*Id.*)

According to Pierucci, that text message "was a nuisance that aggravated [her], wasted her time, invaded her privacy, diminished the value of the cellular services she paid for, caused her to temporarily lose the use and enjoyment of her phone, and caused wear and tear to her phone's data, memory, software, hardware, and battery components." (*Id.* ¶ 9.)

II.  Procedural History

On March 4, 2020, Pierucci initiated this action. (Doc. 1.) In addition to recounting the facts described above, Pierucci alleged that Homes.com had "utilized an automatic telephone dialing system ['ATDS']; hardware or software with the capacity to store or produce cellular telephone number[s] to be called, using a random or sequential number generator, or to dial telephone numbers from preloaded lists." (*Id.* ¶ 10.) This, she alleged, was in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (*Id.* ¶ 3.) She further alleged, upon information and belief, that "substantively identical unsolicited text messages" had been sent "en masse to the cellular telephone numbers of thousands of customers." (*Id.* ¶ 11.) Thus, Pierucci brought a single claim under the TCPA based on the use of ATDSs and sought to represent a class composed of:

> All persons who, on or after four years prior to the filing of the initial complaint in this action through the date of class certification (1) were sent a text message to their cellular telephone number by or on behalf of Homes.com, (2) using a dialing system substantially similar . . . as used to text message Plaintiff, (3) for a substantially similar reason as Homes.com texted Plaintiff.

(*Id.* ¶¶ 13, 21-24.)

Pierucci originally brought this action against, and served a summons on, Dominion

Enterprises, Incorporated ("Dominion"), which Pierucci believed did business as Homes.com. (*Id.* at 2; Docs. 5, 7.) Dominion, in turn, informed Pierucci that it didn't do business as Homes.com and that the entity Pierucci really wanted to sue was Homes.com, Inc. (Doc. 10 ¶ 3.) Pierucci, Dominion, and Homes.com then filed a joint motion to substitute Homes.com as the defendant in this case and to dismiss Dominion. (*Id.*) That motion was granted. (Doc. 11).

On June 8, 2020, Homes.com filed four motions, all of which Pierucci opposes. The first is a motion to "transfer venue on the grounds of *forum non conveniens*" pursuant to 28 U.S.C. § 1404(a). (Doc. 13.) In it, Homes.com argues that transferring this case to the Eastern District of Virginia will best "serve the convenience of the parties, witnesses, and the interests of justice" because Virginia is "the center of gravity in this case" and "the bulk of the conduct challenged took place" there. (*Id.* at 1-2.)

The second motion is a Rule 12(b)(6) motion to dismiss. (Doc. 14.) In it, Homes.com argues (1) the complaint's allegations are insufficient to state a claim; (2) the TCPA is unconstitutional because it favors some forms of speech over others in violation of the First Amendment; and (3) because Pierucci seeks to represent a nationwide class, the different definitions of ATDSs utilized by different Circuits renders the TCPA unconstitutionally vague. (*Id.*)

The third motion is a motion to strike Pierucci's class definition. (Doc. 15.) In it, Homes.com argues that Pierucci's class definition is "facially deficient" because it uses "imprecise, vague, and subjective criteria." (*Id.* at 1.) Homes.com further argues that Pierucci "should not be permitted to pursue a class action on behalf of non-Arizona class members, whose claims have no connection whatsoever to Arizona." (*Id.* at 1-2.)

The final motion was a motion to stay proceedings. (Doc. 16.) That motion sought a stay pending the Supreme Court's then-unreleased decision in *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (2020), which would determine the constitutionality of the TCPA. (Doc. 16.) But after *Barr* was decided, Homes.com withdrew its original motion to stay (Doc. 26) and then filed a new motion to stay, which seeks a stay pending

the Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511, because that case will determine the definition of ATDSs. (Doc. 28.)

On June 8, 2020, in addition to its flurry of motions, Homes.com filed a notice pursuant to Rule 5.1(a) that it is challenging the constitutionality of a federal statute. (Doc. 17.) On July 29, 2020, the United States acknowledged the notice and requested additional time to determine whether it wanted to intervene. (Doc. 30.) The Court granted that request, giving the United States until October 6, 2020 to make a decision. (Doc. 32.)

**ANALYSIS**

The Court is faced with four fully briefed motions. Because the motion to transfer could obviate the need to address the other motions, and because the other motions don't challenge the existence of personal or subject matter jurisdiction, the Court, in its discretion, will begin with the transfer request. *Cf. Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("We hold that a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection."); *Smith v. Gen. Info. Solutions, Inc.*, 2018 WL 4019463, *2 (S.D. Ohio 2018) ("Contrary to Defendant's argument, the Court finds it appropriate and in the interest of judicial economy to consider first Plaintiff's Motion to Transfer Venue.").

I.  Motion To Transfer

As a threshold matter, although Homes.com has styled its motion as a request "pursuant to 28 U.S.C. § 1404(a) to transfer venue on the grounds of *forum non conveniens*" (*id.* at 1), this is something of a misnomer. Transfer under § 1404(a) and *forum non conveniens* are distinct concepts. The latter applies only when the alternative forum is not a "sister federal court"—most commonly, when the alternative forum is another country's judicial system. *Sinochem*, 549 U.S. at 430 ("The common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad . . . . For the federal court system, Congress has . . . provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action.") (quotation and internal citation omitted). *See also Am. Dredging*

*Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994) ("[T]he federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad."); *Galvin v. McCarthy*, 545 F. Supp. 2d 1176, 1182 (D. Colo. 2008) (denying motion to dismiss for *forum non conveniens* because "the Supreme Court has . . . made clear that the doctrine survives only as it relates to dismissal to a *foreign* forum" and "Texas, contrary to the wishes of some of its citizens, is not at this point a foreign forum"). Nevertheless, Homes.com brought its motion under § 1404(a) and its intent—to transfer the case to a more convenient forum—aligns with the purpose of that statute. Accordingly, the Court will consider Homes.com's motion under § 1404(a). *Cf. Galvin*, 545 F. Supp. 2d at 1181 ("I deny Spirit's motion to dismiss on *forum non conveniens* grounds. Nonetheless, I consider Spirit's arguments under the relevant federal statute.").

Section 1404(a) allows a district court to "transfer any civil action to any other district or division where it might have been brought" if a transfer would promote "the convenience of parties and witnesses [and] the interest of justice." Section 1404(a) thus vests courts with the discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted). Because § 1404(a) governs transfer only in a properly venued case, the first step is to determine whether the transferor and transferee courts are proper venues. *LaGuardia v. Designer Brands, Inc.*, 2020 WL 2463385, *6 (S.D. Cal. 2020). "After it is established that venue is proper in both districts, the court must then weigh multiple factors to determine whether transfer is appropriate." *Id.* at *7.

A. **Whether Venue Is Proper In Both Districts**

Neither party disputes that venue is proper in both the District of Arizona and the Eastern District of Virginia. The Court sees no reason to disagree. Venue is proper "in a judicial district in which any defendant resides." 28 U.S.C. § 1391(b)(1). Homes.com maintains its principal place of business in Norfolk, Virginia, which is in the Eastern District of Virginia. (Doc. 13-1 ¶ 5.) Because "an entity with the capacity to sue and be

sued" is "deemed to reside . . . in any judicial district in which . . . [it] is subject to the court's personal jurisdiction," venue is proper in the Eastern District of Virginia. 28 U.S.C § 1391(c)(2).

Venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(b)(2). For purposes of TCPA claims, a "substantial part" of the events occur where the plaintiff received the purportedly prohibited communication. *See, e.g., Schick v. Resolute Bank*, 2019 WL 8014435, *1 (D. Ariz. 2019); *Sapan v. Dynamic Network Factory, Inc.*, 2013 WL 12094829, *3 (S.D. Cal. 2013). Pierucci alleges she received the offending text message in Lake Havasu City, Arizona, which is in the District of Arizona. Accordingly, venue is appropriate in this District as well.

### B.     **Whether Transfer Is Appropriate**

Having established that venue is proper in both the District of Arizona and the Eastern District of Virginia, the Court next "weigh[s] multiple factors in its determination whether transfer is appropriate in [this] particular case." *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000). There are eight factors that courts frequently consider:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009). "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Kempton v. Life for Relief and Dev. Inc.*, 2019 WL 5188750, *2 (D. Ariz. 2019). *See also Jones*, 211 F.3d at 498-99 (providing a similar list of factors and noting "that the relevant public policy of the forum state" may be a relevant consideration). Because the parties point to no other ongoing litigation, the Court will consider all but the sixth factor. *Cf. Martin v. Global Tel*Link Corp.*, 2015 WL 2124379, *4 (N.D. Cal. 2015) (declining to consider a factor the parties had conceded was neutral).

…

- 6 -

1. Plaintiff's Choice Of Forum

"For purposes of a section 1404(a) analysis, the plaintiff's choice of forum always weighs against transfer." *Martin*, 2015 WL 2124379 at *4. In general, "a plaintiff's choice of forum is afforded substantial weight." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). However, that general rule falls away "when an individual . . . represents a class," in which case the plaintiff's choice of forum is "given less weight." *Lou v. Belzberg*, 834 F. 2d 730, 739 (9th Cir. 1987). This is especially true where "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Id.* Further, where there is evidence of forum shopping, "plaintiff's choice will be accorded little deference." *Williams*, 157 F. Supp. 2d at 1106; *Kempton*, 2019 WL 5188750 at *2-3.

Here, Pierucci's choice of forum is entitled to some deference, but not the "substantial weight" it would be accorded in most cases. The reason is simple—Pierucci seeks to represent a class. Moreover, most of the operative facts—where Homes.com made its marketing decisions, where the equipment used to generate the text message in question is kept, and from where the text message was sent—occurred in Virginia, not Arizona. *Kissick v. Am. Residential Servs., LLC*, 2019 WL 6434639, *3 (C.D. Cal. 2019) ("Contrary to Plaintiff's contention that the only operative facts are that he 'resides in this District and received the call(s) at issue in this District,' this action will necessarily involve numerous other operative facts about [defendant's] business practices and decisions behind the call that was alleged to be in violation of the TCPA, whether an automated dialer was used, etc."). *See also LaGuardia*, 2020 WL 2463385 at *7. This further weakens the connection to Arizona and further reduces the weight afforded to Pierucci's choice of forum. *Lou*, 834 F.3d at 739.

On the other hand, there is no evidence of forum shopping—Pierucci resides in this District and has, thus far, sought to litigate her claim only in this District. *Compare Kempton*, 2019 WL 5188750 at *3 (discrediting plaintiff's choice of venue because the case had been filed to avoid adverse result in a different venue); *Martin*, 2015 WL 2124379

at *4 (discrediting plaintiff's choice of venue because case was originally filed in a different venue); *Fabus Corp. v. Asiana Exp. Corp.*, 2001 WL 253185, *1 (N.D. Cal. 2001) ("The degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's choice is not its residence.").

### 2. Convenience of Parties

The Court next considers the relative convenience to the parties of litigating in Virginia versus Arizona. This factor doesn't weigh in favor of a transfer if "[t]he transfer would merely shift rather than eliminate the inconvenience." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Instead, it must make the litigation more convenient overall, even if that comes at the expense of slightly increasing the inconvenience to one party. *Cf. Kissick*, 2019 WL 6434639 at *4.

This factor weighs in favor of transfer. Litigating this case in Virginia is obviously more convenient for Homes.com. It is headquartered there, and, as noted, many of the operative facts in this case occurred in Virginia. *Kissick*, 2019 WL 6434639 at *3-4. Moreover, the Eastern District of Virginia will be more able to compel the testimony of any former employee unwilling to testify, an option likely unavailable in this district. *Mina v. Red Robin Int'l, Inc.*, 2020 WL 4037163, *3 (C.D. Cal. 2020); *Jones*, 211 F.3d at 498-99 ("[T]he court may consider . . . the availability of compulsory process to compel attendance of unwilling non-party witnesses."); Fed. R. Civ. Proc. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person.").

On the other hand, Pierucci would suffer only modest inconvenience if forced to litigate in Virginia. It's true that litigating this action in Virginia will be less convenient to her than litigating in her home state. But the fact this is a class action mitigates that concern. "TCPA class actions are normally attorney driven and require limited participation from the named plaintiff for their individual claims or as class representatives." *LaGuardia*, 2020 WL 2463385 at *8. Additionally, "potential class plaintiffs will come from all over the country," which means that the convenience to

Pierucci is "accorded less weight." *Mina*, 2020 WL 4037163 at *3.

Taken together, the relatively small inconvenience to Pierucci is outweighed by the greater convenience that will come from litigating in Virginia, including access to unwilling witnesses. Thus, this is not a case of "merely shift[ing] the inconvenience" from one party to another, but a shift that will promote the efficient resolution of the entire action.

### 3. Convenience Of Witnesses

"The convenience of witnesses is often the most important factor considered by the court when deciding a motion to transfer for convenience." *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) (internal quotation marks omitted). However, this factor is primarily concerned with *non-party* witnesses—"convenience of a litigant's employee witnesses is entitled to little weight because they can be compelled by their employers to testify regardless of venue." *Kempton*, 2019 WL 5188750 at *3.

The largest concentration of witnesses relevant to this case is in Virginia, where "the largest number of Homes.com employees reside." (Doc. 13-1 ¶ 11.) In particular, the individuals knowledgeable about Homes.com's marketing and texting operations, as well as the individual who sent the text message to Pierucci, are all located in Virginia. (*Id.* ¶¶ 7-9.) Also, although Pierucci seeks to represent a nationwide class, she identifies no Arizona witnesses other than herself. (Doc. 21 at 5-6.) Thus, Virginia is "more convenient for everyone other than" Pierucci. *LaGuardia*, 2020 WL 2463385 at *7.

That said, Homes.com has not identified any third-party witnesses who would be inconvenienced by litigating in Arizona. *Hawkins*, 924 F. Supp. 2d at 1215-16. As such, this factor only weighs "slightly in favor of transfer." *LaGuardia*, 2020 WL 2463385 at *7; *Kissick*, 2019 WL 6434639 at *5 ("[O]ther district courts have frequently found it *more* convenient and preferable for witnesses to testify in person at depositions and trial."). *See also Mina*, 2020 WL 4037163 at *3. *But see Kempton*, 2019 WL 5188750 at *3 ("Here, neither [party has] identified any third-party witnesses who are likely to testify. Therefore, this factor is neutral."); *Hawkins*, 924 F. Supp. 2d at 1215-16 (finding this factor neutral where movant didn't identify any relevant third-party witnesses).

- 9 -

### 4. Ease Of Access To Evidence

Generally, this factor favors whichever venue is home to the bulk of the documentary evidence and witnesses. *Kissick*, 2019 WL 6434639 at *6; *Kempton*, 2019 WL 5188750 at *4; *Hawkins*, 924 F. Supp. 2d at 1216. That said, "this factor no longer carries much weight in the transfer analysis given that technology has made it easier for documents to be transferred to different locations." *Kissick*, 2019 WL 6434639 at *6.

Here, Homes.com has failed to identify any specific documentary evidence not stored in an electronic format. When a party fails to "suppl[y] the court with any information regarding what documents may be relied upon that are only available in hard copy or could not be produced electronically," this factor is neutral. *LaGuardia*, 2020 WL 2463385 at *8; *Martin*, 2015 WL 2124379 at *5 ("[T]his factor [is] neutral. The case is proceeding as a putative nationwide class action. The defendant is headquartered out of state and its relevant records may be in electronic form. The plaintiff's evidence . . . will likely be *de minimis*."). *But see Kissick*, 2019 WL 6434639 at *6 ("[T]his factor marginally weighs in favor of transfer.").

### 5. Familiarity Of Each Forum With Applicable Law

Transfer is favored where the receiving court is more familiar with the law underlying the plaintiff's claim. But as the parties agree, because "the TCPA is a federal statute," both this District and the Eastern District of Virginia are equally familiar with the law. *Kempton*, 2019 WL 5188750 at *3. As such, this factor is neutral. *Id.*; *LaGuardia*, 2020 WL 2463385 at *8; *Kissick*, 2019 WL 6434639 at *5.

### 6. Local Interest In Controversy

The venue with the greater local interest is the venue favored in the transfer analysis. *Williams*, 157 F. Supp. 2d at 1109-10. Where the case is not "particular[ly] localized," this factor favors transfer to the venue where the "crux" of the underlying events took place. *Hawkins*, 924 F. Supp. 2d at 1216-17.

The conflict here is between Arizona's interest in protecting its own citizen (Pierucci) and Virginia's interest in holding a local alleged wrongdoer (Homes.com)

responsible. The crux of this case, as alleged, comes down to wrongdoing emanating from Virginia and reaching nationwide. Although Pierucci felt the harm from the alleged wrongdoing in Arizona, the class-wide nature of her allegations makes the real geographic center of gravity in this case the place where the harm originated. In other words, the "primary focus" of this action is the use of ATDSs to market Homes.com's services to a nationwide audience. In these circumstances, the interest is not "particular[ly] localized" and venue is more appropriate where the crux of the case—where the marketing strategy was developed and the ATDSs were utilized—occurred. *Id.* Accordingly, this factor favors transfer. *See also Mina*, 2020 WL 4037163 at *4 ("[A] TCPA class action making similar allegations against Defendants was recently transferred to Colorado. As in that case, the Court similarly finds that Colorado has a significant local interest in having a dispute involving a company headquartered in its state decided at home.").

### 7. Relative Court Congestion

Finally, the Court considers where the case would likely proceed most quickly. *Martin*, 2015 WL 2124379 at *6.

According to information available from the Administrative Office of the U.S. Courts (on which both parties rely), the average time to disposition of a civil case in the Eastern District of Virginia—which is sometimes referred to "as the 'rocket docket' because of its reputation for getting cases to trial quickly," *Parrish v. Nat. Football League Players Inc.*, 2007 WL 1624601, *8 (C.D. Cal. 2007)—is 5.7 months.[1] The average time to disposition of a civil case in this District is 12.5 months. Halving the time to disposition weighs in favor of transfer.

### 8. Conclusion

Having balanced the relevant factors, the Court concludes that a transfer to the Eastern District of Virginia is warranted. The only factor weighing against transfer is Pierucci's choice of forum, but because this is a class action, that choice is only entitled to

---

[1] *Federal Judicial Caseload Statistics, Table C-5-U.S. District Courts-Civil Federal Judicial Statistics (March 31, 2020)*, https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2020/03/31.

modest weight. On the other hand, court congestion and Virginia's interest in this case strongly favor transfer and the convenience to the parties and witnesses both add to that weight. The rest of the factors are neutral or slightly weigh in favor of transfer. Taken together, this is not a particularly close call.

II. Other Pending Motions

Also pending before the Court are a Rule 12(b)(6) motion to dismiss, a motion to strike Pierucci's class definition, and a motion to stay proceedings. (Docs. 14, 15, 28.) Because the Court has granted Homes.com's motion to transfer, it denies these motions without prejudice so they can be refiled in the Eastern District of Virginia. *Rogovsky Enter., Inc. v. Masterbran Cabinets, Inc.*, 88 F. Supp. 3d 1034, 1049 (D. Minn. 2015) ("Because this Court granted Defendant's Motion to Transfer, its Motion to Stay is denied as moot."); *Papatheodou v. Clark*, 2008 WL 11391375, *5 (N.D. Cal. 2008) ("Since the Court has granted Defendant's NCB's Motion to Transfer the case . . . [t]he Court denies Defendant NCB's Motion to Dismiss for Failure to State a Claim without prejudice to be renewed in the [new venue]."). This has the added benefit of allowing the parties to update their briefing in light of developments in *Barr* and *Facebook* and to invoke the legal standards applicable in the Fourth Circuit.

Accordingly, **IT IS ORDERED** that:

(1) Homes.com's motion to transfer (Doc. 13) is **granted**.

(2) Homes.com's motion to dismiss (Doc. 14) is **denied without prejudice**.

(3) Homes.com's motion to strike (Doc. 15) is **denied without prejudice**.

(4) Homes.com's motion to stay (Doc. 28) is **denied without prejudice**.

(5) This case shall be transferred to the Eastern District of Virginia.

Dated this 10th day of September, 2020.

Dominic W. Lanza
United States District Judge